# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| KEVIN MOORE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN HONDA MOTOR CO., INC., <br><br> Defendant. | Case No. 23-cv-05011-BLF <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** <br><br> [Re: ECF No. 28] |

In this putative class action, Plaintiffs allege a defect in the 9-speed ZF 9HP automatic transmission equipped in certain Honda vehicles. After significant motion practice in *Browning v. Am. Honda Motor Co., Inc.*, No. 5:20-cv-05417-BLF (N.D. Cal.), Plaintiffs' counsel brought this new action, bringing claims under the laws of more states and for a broader range of vehicles than in the *Browning* case. The Court consolidated the *Browning* case under the above-captioned case. *See* ECF No. 19.

Before the Court is Defendant American Honda Motor Co., Inc.'s partial motion to dismiss the consolidated amended complaint. ECF No. 28 ("Mot."). Plaintiffs oppose the motion. ECF No. 41 ("Opp."). Defendant filed a reply. ECF No. 47 ("Reply"). The Court found the motion suitable for disposition without oral argument and vacated the hearing previously scheduled for May 23, 2024. ECF No. 48; *see also* Civ. L.R. 7-1(b).

For the reasons stated below, the Court GRANTS WITH LEAVE TO AMEND IN PART, GRANTS WITHOUT LEAVE TO AMEND IN PART, and DENIES IN PART.

I. BACKGROUND

A. Defendant[1] and the Defect

As alleged in the Consolidated Amended Complaint, ECF No. 20 ("CAC"), and accepted as true for the purposes of this motion, Defendant designs, manufactures, markets, distributes, services, and sells the Class Vehicles. CAC ¶ 80. The "Class Vehicles" include 2016–2022 Honda Pilots, 2018–2019 Honda Odysseys, 2019–present Honda Passports, and 2020–present Honda Ridgelines. *Id.* ¶ 1 n.1. Plaintiffs allege that in 2014, Defendant began equipping certain of its vehicles with a 9-speed automatic transmission called the ZF 9HP Automatic Transmission ("Transmission"). *Id.* ¶ 3. Plaintiffs allege that the Transmission suffers from a design and/or workmanship defect: "there is improper design and/or calibration of the software in control of the [T]ransmission, including the Transmission Control Module and the Powertrain Control Module" in the Class Vehicles ("Transmission Programming Defect" or "Defect"). *Id.* ¶ 6. The Transmission Control Module and the Powertrain Control Module control the function of the transmission and its interaction with the engine. *Id.* While the Transmission may be delivered by a component manufacturer with software already programmed, Defendant must ensure that the software is properly calibrated to function in its own vehicles. *Id.* Plaintiffs allege that Defendant has failed to do this properly, resulting in mistimed gear shifting. *Id.* The Defect causes the Transmission to exhibit illumination of the Malfunction Indicator Light; a rough, delayed, or sudden shifting or failure to shift; grinding or other loud noises during shifting; harsh engagement of gears; sudden or harsh accelerations or decelerations; and sudden loss of power. *Id.*

B. Plaintiffs

<u>Kevin and Anita Moore.</u> Kevin and Anita Moore, California residents, purchased a new 2018 Honda Odyssey from a dealership in Walnut Creek, California. CAC ¶¶ 22–23. The Moores researched the Odyssey prior to purchase on Defendant's website, the dealer's website, and through discussions with an employee of a Honda dealership. *Id.* ¶ 25. On November 17, 2021, with approximately 71,000 miles on the odometer, the Moores' Odyssey began to buck and lag

---

[1] On June 7, 2024, the parties stipulated to the dismissal of Defendant Honda Motor Company, Ltd. ECF No. 50. Accordingly, the only remaining Defendant is American Honda Motor Co., Inc.

2

when accelerating from a stop or when going over 40 mph. *Id.* ¶ 27. The Moores brought their vehicle to Mekatron Premier Auto Service in Concord, California, which was unable to find the problem or perform any repairs. *Id.* On July 10, 2023, the Moores took their vehicle to Walnut Creek Honda, where technicians replaced the transmission. *Id.* ¶ 30. Despite the repair, the vehicle continues to exhibit the Defect. *Id.* ¶ 31.

Tony Boatwright. Tony Boatwright, a South Carolina resident, purchased a new 2019 Honda Odyssey from a dealership in Rock Hill, South Carolina. CAC ¶¶ 32–33. Boatwright researched the Odyssey prior to purchasing the vehicle on Defendant's website, the dealer's website, and through discussions with the sales representatives. *Id.* ¶ 35. Boatwright's vehicle experienced issues within the first few months. *Id.* ¶37. When slowing down and attempting to reaccelerate, the vehicle often failed to get into gear; when it did, it did so with a jerk. *Id.* The transmission would also independently shift, causing the vehicle to gain too much speed going downhill and forcing Boatwright to aggressively brake. *Id.* Boatwright brought the vehicle to the dealership within three months but was told that the vehicle was operating normally. *Id.* ¶ 38. Boatwright also phoned Defendant's customer service hotline and filed a complaint with the National Highway Traffic Safety Administration ("NHTSA") relating to the vehicle's issues. *Id.* ¶¶ 39–40. The vehicle still exhibits the problems. *Id.* ¶ 43.

Chuen Yong. Cheun Yong, a Texas resident, purchased a new 2019 Honda Odyssey LX from a Honda dealership in Irving, Texas. CAC ¶¶ 45–46. Yong, the previous owner of an older Odyssey, researched the vehicle online and test drove it prior to purchase. *Id.* ¶ 48. A week or two after purchasing, the vehicle exhibited the problems described above, especially at speeds around 30 miles per hour, making it difficult for Yong to drive at residential speeds. *Id.* ¶ 50. In the spring of 2020, Yong took the vehicle to the dealership from which he purchased it, and service technicians there acknowledged the problem during a test drive. *Id.* ¶ 51. When the dealer technicians reported back to him after a call to Defendant, they told him the behavior was normal for the vehicle. *Id.* Yong took the vehicle on two other occasions to a different dealership, but no

3

repairs were conducted. *Id.* ¶ 52. His vehicle problems have continued. *Id.* ¶ 54.

Thomas and Julie DeSilvia. Thomas and Julie DeSilvia, Illinois residents, purchased a new 2022 Honda Ridgeline from a Honda dealership in Elmhurst, Illinois. CAC ¶¶ 56–57. Prior to their purchase, the DeSilvias researched the Ridgeline online and visited both the dealership's and manufacturer's websites. *Id.* ¶ 59. They also spoke to a sales representative at the dealership. *Id.* Within a week of purchase in January 2022, the DeSilvias noticed that the transmission would bang loudly, suddenly, and repeatedly when switching between first and second gear. *Id.* ¶ 61. The DeSilvias brought the vehicle to an authorized dealer, which reported that the vehicle was "fine" and did not record the DeSilvias' complaint. *Id.* On April 3, 2023, the DeSilvias brought their vehicle to AutoNation Honda O'Hare, an authorized Honda dealer in Des Plaines, Illinois, who recorded the complaint as "Customer states vehicle transmission bangs very hard when car is cold" and informed the DeSilvias that nothing was wrong with the vehicle after conducting a six-mile test drive. *Id.* ¶ 62. The DeSilvias continue to experience problems with the vehicle. *Id.* ¶ 64.

Mark Treleven. Mark Treleven, an Ohio resident, purchased a new 2016 Honda Pilot from a Honda dealership in Cortland, Ohio. CAC ¶¶ 66–67. Treleven, a previous owner of prior Honda models, researched the vehicle online on both the dealership's and manufacturer's websites and viewed brochures and specifications sent to him by the dealership prior to his purchase. *Id.* ¶ 69. Shortly after purchase, in or around 2017, the transmission in the Pilot began to jerk and lurch upon ignition and lower speeds and jerk and hesitate when the brake or accelerator pedals were depressed. *Id.*¶ 71. Treleven brought his vehicle to Honda dealer, who scanned his vehicle for error codes and after finding none, informed Treleven that his vehicle was operating normally. *Id.* ¶ 72. Treleven later brought his concerns to Defendant by letter and voicemail. *Id.* ¶¶ 74–76. Treleven continues to experience problems with his vehicle. *Id.* ¶ 78.

### C. Procedural History

The initial complaint in the *Browning* case was filed on August 5, 2020 and brought claims

1  on behalf of plaintiffs from Florida, Ohio, and Michigan. *See* 20-5417 ECF No. 1 ("Compl.").
2  The *Browning* plaintiffs filed an amended complaint on December 15, 2020 that added new
3  plaintiffs and claims under South Carolina, Texas, and California law. *See* 20-5417 ECF No. 25
4  ("FAC"). Defendant moved to dismiss, and the Court granted the motion with leave to amend in
5  part and without leave to amend in part. *See Browning v. Am. Honda Motor Co.*, 549 F.Supp.3d
6  996, 1014 (N.D. Cal. 2021) ("*Browning I*"). The *Browning* plaintiffs attempted to address the
7  deficiencies identified in the Court's order in the second amended complaint, which was filed on
8  August 16, 2021. 20-5417 ECF No. 55 ("SAC"). Defendant again moved to dismiss, and the
9  Court granted in part and denied in part the motion and dismissed some claims with leave to
10 amend and some claims without leave to amend. *See Browning v. Am. Honda Motor Co.*, No. 20-
11 CV-05417-BLF, 2022 WL 824106, at *18–19 (N.D. Cal. Mar. 18, 2022) ("*Browning II*"). The
12 *Browning* plaintiffs again attempted to amend to address the deficiencies in the dismissed claims
13 in the third amended complaint, filed on May 9, 2022. 20-5417 ECF No. 75 ("TAC"). Defendant
14 moved to dismiss the *Browning* plaintiffs' claims under the consumer fraud statutes of Florida,
15 Texas, and California, and the Court denied the motion. *See Browning v. Am. Honda Motor Co.*,
16 No. 20-CV-05417-BLF, 2022 WL 5287775, at 3 (N.D. Cal. Oct. 6, 2022) ("*Browning III*"). The
17 *Browning* plaintiffs then voluntarily dismissed the California and Florida plaintiffs, leaving only
18 the claims under the laws of South Carolina and Texas asserted by Boatwright and Yong,
19 respectively. *See* 20-5417 ECF No. 90–91.
20   The Moores filed the initial complaint in this action on September 29, 2023, asserting
21 claims under California and federal law. *See* ECF No. 1. At the stipulation of the parties, the
22 Court related the *Browning* and *Moore* cases and consolidated the cases under the *Moore* case.
23 *See* ECF Nos. 13, 19. Plaintiffs then filed the operative Consolidated Amended Complaint. *See*
24 CAC. The CAC brings the following claims:

| Count | Claim | Subclass | CAC ¶¶ |
|---|---|---|---|
| 1 | Violations of California's Consumers Legal Remedies Act ("CLRA") | CLRA Subclass | 145–59 |
| 2 | Violations of California Business & Professions Code § 17200, *et seq.* | California Subclass | 160–75 |
| 3 | Breach of Implied Warranty Pursuant to Song- | California Subclass | 176–83 |

5

| | | | |
|---|---|---|---|
| | Beverly Consumer Warranty Act | | |
| 4 | Breach of Express Warranty Under California Law | California Subclass | 184–93 |
| 5 | Breach of Implied Warranty Under South Carolina Law | South Carolina Subclass | 194–216 |
| 6 | Violations of Texas Deceptive Trade Practices-Consumer Protection Act | Texas Subclass | 217–29 |
| 7 | Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act | Illinois Subclass | 231–54 |
| 8 | Breach of Express Warranty Under Illinois Law | Illinois Subclass | 255–76 |
| 9 | Breach of Implied Warranty of Merchantability Under Illinois Law | Illinois Subclass | 277–96 |
| 10 | Breach of Express Warranty Under Ohio Law | Ohio Subclass | 297–320 |
| 11 | Breach of Implied Warranty of Merchantability Under Ohio Law | Ohio Subclass | 321–39 |
| 12 | Violations of the Ohio Consumer Sales Practices Act | Ohio Subclass | 340–61 |
| 13 | Breach of Express Warranty Under the Magnuson-Moss Warranty Act | California Subclass<br>Illinois Subclass<br>Ohio Subclass | 230–39[2] |
| 14 | Breach of Implied Warranty Under the Magnuson-Moss Warranty Act | California Subclass<br>Illinois Subclass<br>Ohio Subclass | 240–52 |
| 15 | Fraud by Omission or Fraudulent Concealment | Nationwide Class or All Subclasses | 253–62 |

Defendant again moves to dismiss, arguing that all of the newly added claims should be dismissed. *See* Mot. at 2.

## II. LEGAL STANDARD

"A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

---

[2] In what appears to be a typographical error, the paragraph numbering of the CAC is not continuous, and continues from ¶ 361 at the end of Count 12 to ¶ 230 at the beginning of Count 13.

1    unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

2    (internal quotation marks and citations omitted). While a complaint need not contain detailed

3    factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to

4    relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

5    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the

6    court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

7        In deciding whether to grant leave to amend, the Court must consider the factors set forth

8    by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the

9    Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district

10   court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1)

11   undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by

12   amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence*

13   *Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries

14   the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may

15   warrant denial of leave to amend. *Id.*

## III.  DISCUSSION

### A.  Express Warranty Claims (Counts 4, 8, and 10)

18       Defendant argues that the express warranty claims under the laws of California, Illinois,

19   and Ohio should be dismissed because the Moores, the DeSilvias, and Treleven have failed to

20   allege sufficient facts to support an inference that they each experienced two refusals to repair.

21   Mot. at 6–7. Defendant also argues that the Moores' vehicle was out of warranty at the time it

22   experienced the Defect and thus the Moores do not have a valid express warranty claim. *Id.* at 7.

23   Plaintiffs concede that the California express warranty claim does not survive in light of the

24   Court's previous rulings in *Browning* and oppose dismissal solely to preserve their right to appeal.

25   *See* Opp. at 2 n.5. Plaintiffs argue that the Illinois and Ohio claims are properly pled because the

26   DeSilvias and Treleven have adequately alleged that they presented their vehicles for repair more

27   than once and did not receive repairs. *See id.* at 5–6.

28       "A manufacturer's liability for breach of an express warranty derives from, and is

United States District Court
Northern District of California

measured by, the terms of that warranty. Accordingly, the 'requirement[s]' imposed by an express warranty claim are not 'imposed under state law,' but rather imposed by the warrantor." *Clark v. Am. Honda Motor Co.*, 528 F.Supp.3d 1108, 1117 (C.D. Cal. 2021) ("*Clark I*") (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992)). In *Browning I* and *Browning II*, the Court held that more than one presentation to the dealer is required to plead a refusal to repair. *See Browning I*, 549 F.Supp.3d at 1012 ("All Plaintiffs will, at a minimum, need to plead that they brought their Class Vehicles in for repair more than once."); *Browning II*, 2022 WL 824106, at *10 (same); *see also Clark*, 528 F.Supp.3d at 1117–18 ("Plaintiffs who brought their vehicle for repair only once or not at all cannot maintain a breach of warranty claim. This is because unless the purchaser presents the vehicle for repair more than once, it cannot be found that the dealer 'refused' to satisfy its obligations."); *Snyder v. TAMKO Bldg. Prod., Inc.*, No. 1:150-CV-01892-TLN-KJN, 2019 WL 4747950, at *4 (E.D. Cal. Sept. 30, 2019) ("A limited warranty fails of its essential purpose only if, after multiple attempts, the warrantor fails to repair the defects in a reasonable timeframe.").

As an initial matter, the Court agrees with Defendant that Count 4 for breach of express warranty under California law must be dismissed because the Moores do not have a valid express warranty claim. Although the Moores presented their vehicle to a dealership twice, the second time that the Moores presented their vehicle, they actually received repairs to the transmission. *See* CAC ¶¶ 27, 30. Moreover, the Moores did not present their vehicle for repair until after the vehicle was out of warranty. Defendant's warranty covers transmission repairs for five years or 60,000 miles, whichever comes first. *See* ECF No. 28-1 ("Ex. A") at 10.[3] The Moores presented their vehicle for repair after it had accumulated 71,000 miles on its odometer. *See* CAC ¶ 27. In light of these issues, the Court finds that the Moores have failed to allege a valid express warranty claim. *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *8

---

[3] The Court considers the 2018 Honda Powertrain Limited Warranty as incorporated by reference in the CAC because it forms the basis of Plaintiffs' express warranty claims. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

1    (C.D. Cal. Nov. 23, 2020) ("[I]t appears that neither [plaintiff] has a valid express-warranty claim

2    because no problems occurred while the warranty was effective.").

3           The Court next finds that Plaintiffs' allegations are sufficient for the Court to reasonably

4    infer that Defendant refused to repair the DeSilvias' and Treleven's vehicles.  When the DeSilvias

5    first brought their vehicle to a dealership, the employees informed them that the vehicle was "fine"

6    and did not record the DeSilvia's complaint.  CAC ¶ 61.  When the DeSilvias brought their vehicle

7    to a second dealership, that dealership recorded their complaint as "Customer states vehicle

8    transmission bangs very hard when car is cold," performed a six-mile test drive, and informed

9    them that nothing was wrong with the vehicle.  *Id.* ¶ 62.  Similarly, when Treleven first brought

10   his vehicle to a dealership, the employees scanned it for transmission error codes and informed

11   Treleven that the vehicle was operating normally.  *Id.* ¶ 72.  The CAC alleges that he brought his

12   vehicle to the same dealership on two other occasions, and states that "[e]ach time, the dealer

13   returned Plaintiff's vehicle to him without an attempted repair and again told him the vehicle was

14   operating normally."  *Id.* ¶ 73.  Construing, as the Court must, these allegations in the light most

15   favorable to Plaintiffs, the Court may reasonably infer that Defendant refused to repair the

16   DeSilvias' and Treleven's vehicles because the DeSilvias and Treleven presented their vehicles for

17   repair at least twice and have yet to receive a repair.  *See Hardy v. Mitsubishi Motors N. Am., Inc.*,

18   No. 8:21-cv-01983-MEMF (KESx), 2023 WL 4067408, at *12 (C.D. Cal. Mar. 30, 2023) (finding

19   similar allegations adequate to state a claim for breach of express warranty).

20          Defendant again argues that a dealership does not "refuse" to repair a vehicle when it does

21   not identify a problem.  *See* Reply at 1–2.  The Court has already rejected this argument in

22   *Browning II*, in which the Court noted that "[i]t would be too easy to avoid warranty claims if a

23   dealer could merely deny that it identified a problem even if there were symptoms of it."

24   *Browning II*, 2022 WL 824106, at *10 (finding *Clark v. Am. Honda Motor Co.*, No. CV 20-03147

25   AB (MRWx), 2021 WL 4260232, at *3 (C.D. Cal. Sept. 14, 2021) ("*Clark II*"), a case on which

26   Defendant again relies, distinguishable).  Defendant argues that the allegations in *Browning II* that

27   the Court found adequate to state a claim are distinguishable from that of the DeSilvias and

28   Treleven because those allegations showed that the dealers actually acknowledged issues during

9

1    test drives. Reply at 2. However, the alleged facts regarding the DeSilvias and Treleven are
2    substantially similar to the facts alleged regarding Plaintiff Pina in *Browning II* that the Court
3    found sufficient to state a claim. *Compare* CAC ¶¶ 61–62, 72–73 (alleging that the dealers
4    performed a test, told Plaintiffs that the vehicle was fine, and did not perform a repair), *with* SAC
5    ¶ 90 (alleging that the dealer test drove Pina's vehicle, failed to perform repairs, and refused to
6    make note of his complaints). Accordingly, the Court concludes that the allegations regarding the
7    DeSilvias and Treleven are sufficient to state a claim for breach of express warranty.

8        In light of the above, the Court GRANTS Defendant's motion to dismiss Counts 4. Count
9    4 (breach of express warranty under California law) is DISMISSED WITHOUT LEAVE TO
10   AMEND. The Court DENIES Defendant's motion to dismiss Count 8 (breach of express
11   warranty under Illinois law) and Count 10 (breach of express warranty under Ohio law).

12       **B.**    **Implied Warranty Claims (Counts 3, 9, and 11)**
13           **i.**    **California Implied Warranty Claim (Count 3)**

14       Defendant argues that Plaintiffs' implied warranty claim under the California Song-
15   Beverly Act (Count 3) should be dismissed because implied warranties are limited to the duration
16   of the written warranty and the Moores did not experience any problem with their vehicle until the
17   written warranty had expired. Mot. at 7–8. Plaintiffs respond that the Defect rendered the
18   Moores' vehicle unmerchantable at the time of purchase and that any statute of limitations
19   argument is an affirmative defense and is tolled. Opp. at 6–7.

20       "Under California law, a manufacturer may place limitations on implied warranties."
21   *Pascal v. Nissan N. Am., Inc.*, No. 8:20-CV-00492-JLS-JDE, 2022 WL 2784393, at *5 (C.D. Cal.
22   June 8, 2022) (citing Cal. Com. Code § 2316; Cal. Civ. Code § 1791.1(c)). The 2018 Honda
23   Limited Warranty states that "[a]ny implied warranties, including the implied warranty of
24   merchantability and fitness for a particular purpose, are limited to the duration of this written
25   warranty." Ex. A at 39. As noted above, Defendant's warranty covers transmission repairs for
26   five years or 60,000 miles, whichever comes first. *Id.* at 10.

27       The Court finds that Plaintiffs fail to state an implied warranty claim under California law
28   because the Moores did not experience the Defect until their vehicle had accumulated around

71,000 miles on its odometer, which puts the vehicle outside the duration of the written warranty and by extension, the limitations on implied warranties in the written warranty. *See* CAC ¶ 27. Plaintiffs' argument that they have alleged that the Defect is inherent and made the vehicles unmerchantable at the time of purchase is unavailing. Federal district courts in California are divided on whether a plaintiff can plead breach of the implied warranty of merchantability under California law with allegations of a latent defect that was not discovered and reported within the implied warranty's time limitations. *See Bui v. Mercedes-Benz U.S.A., LLC*, No. 23-CV-05148-PCP, 2024 WL 1298335, at *2 (N.D. Cal. Mar. 27, 2024) (acknowledging split); *Peterson v. Mazda Motor of Am., Inc.*, 44 F.Supp.3d 965, 972 (C.D. Cal. 2014) (describing split). However, the Court need not decide which side of the split it should adopt as a general rule because Plaintiffs have not adequately alleged that the Defect is inherent. Plaintiffs allege generally that the "Defect is inherent in each Class Vehicle and were [sic] present in each Class Vehicle at the time of sale." *See* CAC ¶¶ 16, 126; *see also id.* ¶¶ 151, 165, 179, 241, 328, 349, 255 (similar). This conclusory allegation is inadequate for the Court to plausibly infer that the Defect was present in every Class Vehicle, including the Moores', at the time of sale. *See Bui*, 2024 WL 1298335, at *2 (finding similar allegations inadequate to establish that a defect was inherent); *cf. Chapman v. Gen. Motors LLC*, 531 F.Supp.3d 1257, 1278 (E.D. Mich. 2021) (noting that conclusory allegations about a defect being inherent would not be sufficient to allege a latent defect). To the extent that Plaintiffs characterize Defendant's argument as a statute of limitations defense subject to tolling by the discovery rule, fraudulent concealment, and the terms of the express warranty, Plaintiffs are incorrect. Although Plaintiffs need not plead the lack of affirmative limitations, the duration of a warranty is a separate timing issue and Plaintiffs must plead a breach of a valid warranty. *See Marchante v. Sony Corp. of Am.*, 801 F.Supp.2d 1013, 1021 (S.D. Cal. 2011) (distinguishing the duration of a warranty and the statute of limitations).

Accordingly, the Court GRANTS Defendant's motion to dismiss Count 3. Because Plaintiffs may allege further facts to show the Defect is inherent, the Court DISMISSES Count 3 with LEAVE TO AMEND.

11

### ii.     Illinois Implied Warranty Claim (Count 9)

Defendant argues that the Illinois implied warranty claim should be dismissed because the DeSilvias fail to allege privity with Defendant and that the dealership from which the DeSilvias purchased their vehicle is not an agent of Defendant. Mot. at 9–10. Plaintiffs argue that any privity issues should be resolved with a more fully developed record and that they have adequately alleged privity by pleading that their vehicle warranty was provided by Defendant and because Illinois recognizes a third-party beneficiary exception. Opp. at 7.

Under Illinois law, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Rodriguez v. Ford Motor Co.*, 596 F.Supp.3d 1050, 1054 (N.D. Ill. 2022) (quoting *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003)). "There is no contractual privity between a manufacturer and a person who buys from an independent dealer." *Id.* at 1056. Under Illinois law, dealerships are not agents of the manufacturer for privity purposes. *See Miller v. Ford Motor Co.*, No. 2:20-cv-01796-DAD-CKD, 2024 WL 1344597, at *21 (E.D. Cal. Mar. 29, 2024).

The Court finds that Plaintiffs have failed to adequately allege privity between the DeSilvias and Defendant because the DeSilvias purchased their vehicle from a dealership, rather than Defendant. *See* CAC ¶ 57. Contrary to Plaintiffs' argument, dismissal on this basis is appropriate, and courts have routinely dismissed implied warranty claims under Illinois law for failure to allege privity. *See Miller*, 2024 WL 1344597, at *21–22 (dismissing a claim for breach of implied warranty under Illinois law without leave to amend because the plaintiffs purchased their vehicle from a dealership, rather than Ford); *Rodriguez v. Ford Motor Co.*, 596 F.Supp.3d at 1054 (similar); *Cho v. Hyundai Motor Co., Ltd.*, 636 F.Supp.3d 1149, 1176 (C.D. Cal. 2022) (similar). Plaintiffs argue that the direct dealing and third-party beneficiary exceptions to the privity requirement should apply to this case. Opp. at 7. However, many federal courts have held that Illinois does not allow *any* exception to the privity requirement. *See Manley v. Hain Celestial Grp., Inc.*, 417 F.Supp.3d 1114, 1123 (N.D. Ill. 2019) (collecting cases and summarizing Illinois law); *see also Chapman*, 531 F.Supp.3d at 1278 (noting that "no exceptions are recognized" to the privity requirement under Illinois law); *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149,

12

1176 (C.D. Cal. 2022) (rejecting *Elward v. Electrolux Home Prods., Inc.*, 214 F.Supp.3d 701 (N.D. Ill. 2016), a case on which Plaintiffs rely in support of exceptions to the privity requirement, as contrary to Illinois law). The Court finds the reasoning of these cases persuasive and adopts their holdings here.

Even if the Court were to consider the direct dealing and third-party beneficiary exceptions, the Court would find that Plaintiffs have failed to adequately allege facts in support of those exceptions. To the extent that the direct dealing exception might apply, courts have required direct communication between the purchaser and the manufacturer. *See, e.g.*, *Rodriguez*, 596 F.Supp.3d at 1056. Similarly, to the extent that a third-party beneficiary exception might apply, the plaintiff must allege that they are the "direct beneficiary" of any contract between the defendant and the dealer. *See Manley*, 417 F.Supp.3d at 1124. The DeSilvias do not allege that they communicated directly with Defendant, nor have they identified any facts that would show how they were the direct beneficiary of any contract between Defendant and a dealer.

Accordingly, the Court GRANTS Defendant's motion to dismiss Count 9. In light of the Court's holding, the Court finds that amendment would be futile and DISMISSES Count 9 WITHOUT LEAVE TO AMEND.

### iii. Ohio Implied Warranty Claim (Count 11)

Defendant argues that the Ohio implied warranty claim should be dismissed because Treleven fails to allege privity with Defendant, and that if the claim sounds in tort, it is barred by the two-year statute of limitations for such claims. Mot. at 8–9. Plaintiffs concede that the Ohio implied warranty claim does not survive in light of the Court's previous rulings in *Browning* and oppose dismissal solely to preserve their right to appeal. *See* Opp. at 2 n.5.

For implied warranty claims under Ohio law, privity with the seller is required under Ohio Rev. Code § 1302.27(A). *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007) ("[P]urchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with whom they are in privity."). The Court has twice rejected similar implied warranty claims under Ohio law in *Browning I* and *Browning II*. *See Browning I*, 549 F.Supp.3d at 1011 (dismissing implied warranty claims under Ohio law for failure to allege privity);

13

*Browning II*, 2022 WL 82410, at *7–8 (dismissing implied warranty claims under Ohio law for failure to allege privity and rejecting arguments that privity can be met by proving the existence of an express warranty, that an exception exists for agency or third-party beneficiary relationships, and that an exception exists for cases in which a plaintiff relies on written labels or advertisements of a manufacturer). Treleven brings a contract-based implied warranty claim, and he purchased his vehicle from a dealership, rather than Defendant. CAC ¶ 67 (alleging that Treleven purchased his vehicle from a dealership); *id.* ¶¶ 321–39 (alleging a claim for breach of the implied warranty of merchantability and citing Ohio UCC provisions); *see also O.M. Through McConnell v. KLS Martin LP*, 560 F.Supp.3d 1084, 1091 (N.D. Ohio 2021) (finding that a claim sounded in contract when it referenced the warranty of merchantability and cited the Ohio UCC). Accordingly, Treleven's claim, like the Pappases' claim in *Browning*, sounds in contract and his failure to adequately allege privity is a deficiency that requires dismissal. Plaintiffs have offered no argument for why Treleven's claims should be treated differently than the Pappases, and the Court finds none.

Accordingly, the Court GRANTS Defendant's motion to dismiss Count 11. Count 11 is DISMISSED WITHOUT LEAVE TO AMEND.

### C. Magnuson-Moss Claims (Counts 13 and 14)

Defendant argues that the Magnuson-Moss Warranty Act ("MMWA") claims must be dismissed because controlling Ninth Circuit precedent requires at least 100 named plaintiffs to bring a class action under the MMWA. Mot. at 10. Plaintiffs argue that they may pursue MMWA claims with fewer than 100 named plaintiffs if the Court has jurisdiction under some other statute, such as the Class Action Fairness Act ("CAFA"). Opp. at 8.

The MMWA imposes specific limitations on the exercise of jurisdiction by federal courts. The Act states that no claim is cognizable if (A) the amount in controversy of any individual claim is less than $25; (B) the amount in controversy of all claims is less than $50,000; or (C) the number of named plaintiffs is less than 100. 15 U.S.C. § 2310(d)(3); *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034–35 (9th Cir. 2020) (affirming dismissal of Magnuson-Moss claims for failure to name at least 100 plaintiffs). In this case, Plaintiffs' MMWA claims are barred by the

14

numerosity requirement of § 2310(d)(3)(C) because they have less than 100 named plaintiffs. *See* CAC ¶ 1 (naming seven plaintiffs). Plaintiffs argue that they need not satisfy the MMWA's numerosity requirement because they allege that the Court has subject matter jurisdiction under CAFA. Opp. at 8. However, this argument was squarely rejected by the Ninth Circuit. In *Floyd*, the Ninth Circuit held that the MMWA's text is clear that 100 named plaintiffs are required to bring a class action. *Floyd*, 966 F.3d at 1034. Although CAFA does not require naming all 100 plaintiffs, the Ninth Circuit held that CAFA did not impliedly repeal the MMWA's numerosity requirement because "the MMWA simply prevents claims under that Act from proceeding in federal court absent the satisfaction of certain jurisdictional prerequisites" and that the court "can easily give effect to that command and apply CAFA in all other cases." *Id.* at 1035. Thus, the Ninth Circuit held that "CAFA may not be used to evade or override the MMWA's specific numerosity requirement." *Id.*

Accordingly, the Court GRANTS Defendant's motion to dismiss Counts 13 and 14. In the unlikely event that Plaintiffs wish to add 93 or more additional named Plaintiffs, the Court DISMISSES Counts 13 and 14 with LEAVE TO AMEND.

### D. Ohio Consumer Sales Practices Act Claim (Count 12)

Defendant argues that Plaintiffs' claim under the Ohio Consumer Sales Practices Act ("OCSPA") is barred by the absolute two-year statute of limitations because Treleven purchased his vehicle more than two years before the original complaint was filed in *Browning*. Mot. at 11. Plaintiffs concede that the OCSPA claim does not survive in light of the Court's previous rulings in *Browning* and oppose dismissal solely to preserve their right to appeal. *See* Opp. at 2 n.5.

The Ohio Consumer Protection Act has a two-year statute of limitations. *See* Ohio Rev. Code Ann. § 1345.10(C). This statute of limitations is "absolute" and is not subject to tolling or the discovery rule. *See Gerstle v. Am. Honda Motor Co., Inc.*, 2017 WL 2797810, at *10 (N.D. Cal. Jun. 28, 2017) (citing *Zaremba v. Marvin Lumber & Cedar Co.*, 458 F.Supp.2d 545, 552 (N.D. Ohio 2006)). The Court finds that Treleven's claim is time-barred because he purchased his vehicle on September 14, 2016, which is more than two years before this action was brought. CAC ¶ 67.

Accordingly, the Court GRANTS Defendant's motion to dismiss Count 12. Count 12 is DISMISSED WITHOUT LEAVE TO AMEND.

### E. Illinois Consumer Fraud and Deceptive Business Practices Act (Count 7)

Defendant argues that the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim should be dismissed because Plaintiffs failed to allege that the DeSilvias saw particular communications from which information was omitted. Mot. at 11–12. Plaintiffs argue that their IFCA claim is adequately pled because they alleged sufficient facts to raise an inference of a communication or advertisement, they have identified Defendant's public statements, and they can allege indirect communications. Opp. at 9–10.

In order to state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Muehlbauer v. Gen. Motors Corp.*, 431 F.Supp.2d 847, 867 (N.D. Ill. 2006) (quoting *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002)). "An omission or concealment of a material fact in the conduct of trade or commerce constitutes a deceptive act." *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill.App.3d 504, 508 (2005). "An 'omission' under the ICFA is an omission from a communication, not a general failure to disclose." *Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *9 (N.D. Ill. Dec. 18, 2015). The Illinois Supreme Court has held that "to maintain an action under the Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause." *De Bouse v. Bayer*, 235 Ill.2d 544, 554 (2009). "If there has been no communication with the plaintiff, there have been no statements and no omissions. . . . A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant." *Id.* at 555.

The Court finds that Plaintiffs' allegations are inadequate to state an ICFA claim. Plaintiffs allege that prior to their purchase, the DeSilvias "researched the vehicle on Google, . . .

16

visited both the dealership and manufacturer's websites," and "spoke with a sales representative [at the dealership]." CAC ¶ 59. Other courts have found that similar allegations are inadequate to state a claim under the ICFA because they fail to identify specific communications that omitted material information. *See, e.g.*, *Slafter v. Haier US Appliance Sols., Inc.*, 605 F.Supp.3d 1102, 1107 (S.D. Ill. 2022) (holding that "alleged opportunities or locations where [the defendant] could have disclosed the alleged defect" are inadequate to establish statements or omissions for an ICFA claim); *Rodriguez*, 596 F.Supp.3d at 1057 (dismissing an ICFA claim where the plaintiff failed to identify any direct statements or communications); *Guajardo v. Skechers USA, Inc.*, No. 4:19-cv-04104-SLD-JEH, 2021 WL 4302532, at *3 (C.D. Ill. Sept. 21, 2021) (noting that allegations "regarding Skechers' advertising, 'which only provided succinct information about the shoes' light-up features and charging instructions'" were inadequate to plead the deceptive practice element of an ICFA claim); *O'Connor v. Ford Motor Co.*, 477 F.Supp.3d 705, 720 (N.D. Ill. 2020) (dismissing an ICFA claim because "Plaintiff does not identify any particular direct statements from Defendant that contain material omissions"); *cf. De Bouse*, 235 Ill.2d at 555, (noting that the plaintiffs in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996), alleged actionable omissions because they identified direct statements from Suzuki, made in a car review piece in *Car & Driver* magazine).

Accordingly, the Court GRANTS Defendant's motion to dismiss Count 7. The Court DISMISSES Count 7 WITH LEAVE TO AMEND to allow Plaintiffs to allege specific statements.

### F. Common Law Fraudulent Omission Claim (Count 15)

Defendant argues that Plaintiffs' common law fraudulent omission claim should be dismissed for failure to allege the applicable law. Mtn. at 12–13. The Court agrees. This Court and others in this District have repeatedly held that, due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal. *See In re Nexus 6P Prod. Liab. Litig.*, 293 F.Supp.3d 888, 933 (N.D. Cal. 2018) (Freeman, J.); *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016) (Freeman, J.); *Raynaldo v. Am. Honda Motor Co.*, No. 21-CV-05808-HSG, 2023 WL 6959969, at

17

\*7 (N.D. Cal. Oct. 19, 2023).  In order for the Court to determine whether a claim has been adequately pled, Plaintiff must allege the applicable law.

Accordingly, the Court GRANTS Defendant's motion to dismiss Count 15.  Count 15 is DISMISSED WITH LEAVE TO AMEND.

### G. Equitable Relief (Counts 1 and 2 and Requests for Equitable Relief Pursuant to MMWA, TDTPA, ICFA, and OCSPA)

Defendant argues that Plaintiffs' requests for equitable relief, including restitution and prospective injunctive relief, must be dismissed because Plaintiffs have failed to plead the absence of an adequate remedy at law.  Mot. at 15.  Plaintiffs argue that none of their claims for prospective injunctive relief is barred by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  Opp. at 12–13.  Plaintiffs also argue that the state laws of California, Illinois, and Ohio permit them to pursue injunctive relief.  *Id.* at 13.

The Court again finds that Plaintiffs have not pled that they lack an adequate remedy at law and that of Plaintiffs' equitable claims, including those for restitution and prospective injunctive relief, fail.  *See Sonner*, 971 F.3d at 844.  Plaintiffs have not pointed to any allegation in the CAC *pleading* that they lack an adequate remedy at law.  Although Plaintiffs argue that *Sonner* is distinguishable from this case, Plaintiffs have merely copied and pasted the same argument that the Court rejected in *Browning I*.  *See Browning I*, 549 F.Supp.3d at 1014.  *See also Clark*, 528 F.Supp.3d at 1121–22 (finding that *Sonner* applies to both past harm and prospective relief); *see also In re California Gasoline Spot Market Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645, at \*7–8 (N.D. Cal. Mar. 29, 2021) (same), *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at \*3 (N.D. Cal. Oct. 13, 2020) (collecting cases).  Plaintiffs have not raised any argument why the Court's prior ruling was incorrect or how the allegations, or lack thereof, showing an inadequate legal remedy in the CAC are any different than the deficient allegations in the FAC.  Finally, to the extent that Plaintiffs suggest that their claims for equitable relief are permissible because "each applicable consumer protection law . . . provide[s] a private right of action for an individual consumer to seek injunctive relief for suffering damages in addition to legal relief," this argument is plainly foreclosed in *Sonner*.  *See Sonner*, 971 F.3d at

18

843–44 ("At bottom, '[t]hat a State may authorize its courts to give equitable relief unhampered by' the 'restriction[]' that an adequate remedy at law be unavailable 'cannot remove th[at] fetter[] from the federal courts.'" (alterations in original) (quoting *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105–06 (1945))).

Accordingly, the Court GRANTS Defendant's motion to dismiss Counts 1 and 2 and the requests for equitable relief under Counts 7, 12, 13, and 14.  Because Plaintiffs were made aware of this deficiency in their pleading three years ago after the Court's ruling in *Browning I* and failed to allege any additional facts showing that they lack an adequate remedy at law, the Court DISMISSES the requests for equitable relief WITHOUT LEAVE TO AMEND.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant American Honda Motor Co., Inc.'s partial motion to dismiss (ECF No. 28) is GRANTED WITH LEAVE TO AMEND IN PART, WITHOUT LEAVE TO AMEND IN PART, and DENIED IN PART.

1. Counts 1, 2, 4, 9, 11, and 12 are DISMISSED WITHOUT LEAVE TO AMEND.

2. Count 3 is DISMISSED WITH LEAVE TO AMEND to allow Plaintiffs to allege further facts to show that the Defect is inherent.

3. Count 7 is DISMISSED WITH LEAVE TO AMEND to allow Plaintiffs to allege specific statements from which material information was omitted to state a claim under the ICFA.

4. Counts 13, 14 are DISMISSED WITH LEAVE TO AMEND to the extent that Plaintiffs wish to add additional named plaintiffs to reach 100 named plaintiffs.

5. Count 15 is DISMISSED WITH LEAVE TO AMEND to allow Plaintiffs to allege the applicable law.

6. Plaintiffs' requests for equitable relief are DISMISSED WITHOUT LEAVE TO AMEND.

7. Defendant's motion to dismiss Counts 8 and 10 is DENIED.

8. Plaintiffs may file an amended complaint consistent with this Order within 30 days, subject to reasonable stipulation or motion for an extension of time.

Dated: July 15, 2024

_____
BETH LABSON FREEMAN
United States District Judge