**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| KEVIN MOORE, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>                    Defendant. | Case No.  5:23-cv-05011-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT**<br><br>[Re:  Dkt. No. 59] |

Before the Court is Defendant American Honda Motor Co., Inc.'s Partial Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint.  Dkt. No. 59 ("Mot.").  Plaintiffs oppose the partial motion to dismiss, Dkt. No. 60 ("Opp."), and Honda filed a reply in support of its motion, Dkt. No. 62 ("Reply").  The Court held a hearing on the motion on January 16, 2025, *see* Dkt. No. 70, at which the Court requested supplemental briefing from both Parties on the independent tort doctrine and economic loss rule issues, Dkt. No. 74 at 33:6–19, 34:17–24. Plaintiffs filed their supplemental brief on February 3, 2025, Dkt. No. 77 ("Plf.'s Suppl. Br."), and Honda filed its supplemental brief on February 18, 2025, Dkt. No. 78 ("Deft.'s Suppl. Br.").

For the following reasons, the Court hereby GRANTS IN PART AND DENIES IN PART Defendant's Partial Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint (Dkt. No. 59).

## I.    BACKGROUND

Plaintiffs Kevin Moore, Anita Moore, Tony Boatwright, Chuen Yong, Thomas DeSilvia, Julie DeSilvia, and Mark Treleven bring this putative class action on behalf of "all current and former owners or lessees who purchased or leased any Honda vehicle equipped with a 9-speed

automatic transmission . . . marketed, distributed, sold, warranted, and/or serviced by American Honda Motor Co., Inc." Dkt. No. 53, Second Amended Consolidated Class Action Complaint ("SACC") ¶ 1. This action is consolidated with *Browning v. American Honda Motor Co.*, No. 20-cv-05417-BLF (N.D. Cal. filed Aug. 5, 2020). *See* Dkt. No. 19. For purposes of this motion, the Court takes the following facts alleged in the Second Amended Consolidated Class Action Complaint as true.

### A. Defendant and the Transmission Programming Defect

Defendant American Honda Motor Co., Inc. ("Honda") is a North American subsidiary of Honda Motor Company, Ltd. SACC ¶ 92. The company markets, distributes, services, and sells Honda and Acura branded motor vehicles and components throughout the United States. *Id.* In 2014, Honda began to equip certain vehicles with a 9-speed "automatic" transmission, denominated ZF 9HP, which was intended to increase the fuel economy of the vehicles. *Id.* ¶¶ 1, 3. The "Class Vehicles" include 2016-2022 Honda Pilots, 2018-2019 Honda Odysseys, 2019-present Honda Passports, and 2020-present Honda Ridgelines. *Id.* ¶ 1 n.1. Unfortunately, the 9-speed transmission causes the Class Vehicles to exhibit "rough and delayed shifting, loud noises during shifting, harsh engagement of gears, sudden, harsh accelerations and decelerations, and sudden loss of power." *Id.* ¶ 3. These undesirable transmission characteristics are due to "improper design and/or calibration of the software in control of the transmission." *Id.* ¶ 6. Honda has issued service campaigns and multiple "Technical Service Bulletins" ("TSBs") that acknowledge the "defects and/or symptoms of the Transmission Programming Defect in the ZF 9HP Automatic Transmission." *Id.* ¶ 14.

### B. Plaintiffs

<u>Kevin and Anita Moore</u> – Plaintiffs Kevin and Anita Moore are California residents who purchased a new 2018 Honda Odyssey from Walnut Creek Honda on or around February 27, 2018. *Id.* ¶¶ 24–25. The vehicle was for personal, family, or household use, and "[p]assenger safety and reliability were important factors" in the Moore Plaintiffs' purchase decision. *Id.* ¶¶ 26–27. Within two years of the purchase, however, the Moore Plaintiffs' vehicle was "exhibiting a 'kicking' sensation" and "fail[ing] to accelerate adequately or predictably." *Id.* ¶ 29.

On or around November 17, 2021, the Moore Plaintiffs brought their vehicle to an automobile repair shop. *Id.* ¶ 30. The automobile shop was unable to diagnose the problem. *Id.* Then, on or around July 7, 2023, "the transmission bucked, lagged, illuminated a warning light, shifted into neutral without driver input, and prevented the vehicle's drive gear from being engaged." *Id.* ¶ 32. The Moore Plaintiffs then brought the vehicle to Walnut Creek Honda on or around July 10, 2023. *Id.* ¶ 33. The Honda technician explained that "the transmission had internal gear failure." *Id.* However, despite the fact that the technician "replaced the transmission and transmission assembly" in the vehicle, it "continue[d] to exhibit the Transmission Programming Defect." *Id.* ¶¶ 33–34.

Tony Boatwright – Plaintiff Tony Boatwright is a resident of South Carolina who purchased a new 2019 Honda Odyssey from Honda Cars of Rock Hill, South Carolina. *Id.* ¶¶ 35–36. Plaintiff Boatwright also purchased the vehicle primarily for personal, family, or household use, and valued "[p]assenger safety and reliability" in making the decision to purchase the vehicle. *Id.* ¶¶ 37–38. Before purchasing the vehicle, "Boatwright spent time researching the Honda Odyssey online," including by researching the vehicle on Google and visiting the dealership and the manufacturer's websites. *Id.* ¶¶ 38. He also spoke with a sales representative at Honda Cars of Rock Hill. *Id.* Unfortunately, within months of the purchase, Plaintiff Boatwright's vehicle "experienced many problems with the transmission." *Id.* ¶ 40. For example, the car sometimes failed to get into gear during attempts to reaccelerate after slowing down, and when it did get into gear, the vehicle would "jerk" and/or "lurch." *Id.* The vehicle would also "gain[] too much speed while going downhill" due to independent transmission shifting, forcing Plaintiff Boatwright to "aggressively brake in order to avoid a collision." *Id.* Plaintiff Boatwright returned the vehicle to the dealership within three months of purchase, but he was informed that the vehicle was operating normally and the repairs that he requested were not performed. *Id.* ¶ 41. Plaintiff Boatwright continues to experience the Transmission Programming Defect with his vehicle. *Id.* ¶ 46.

Chuen Yong – Plaintiff Chuen Yong is a resident of Texas who purchased a new 2019 Honda Odyssey LX from David McDavid Honda on or around January 12, 2019. *Id.* ¶¶ 48–49. Plaintiff Yong also purchased the vehicle primarily for personal, family, or household use, and

3

valued "[p]assenger safety and reliability" in making the decision to purchase the vehicle.  *Id.*
¶¶ 50–51.  Plaintiff Yong researched the vehicle online prior to purchase, and also relied upon his "years of ownership of prior Honda models, including an older Odyssey."  *Id.* ¶ 51.  Further, Plaintiff Yong test drove the vehicle at David McDavid Honda.  *Id.*  Within a week or two after purchase, however, Plaintiff Yong's vehicle began "exhibiting harsh or delayed shifting and engagement, hesitation, jerking, shuddering, lurching, clanging and banging of gears, and shifting back and forth between" gears, which made it particularly difficult for Plaintiff Yong to drive the vehicle at residential area speeds.  *Id.* ¶ 53.  In or around the spring of 2020, Plaintiff Yong brought the vehicle to David McDavid Honda.  *Id.* ¶ 54.  Plaintiff Yong took the vehicle out on a test drive with two service technicians in order to demonstrate the issue, during which time the vehicle "exhibited the jerking and rough shifting, which the service technicians acknowledged."  *Id.*  Later, a technician "informed Mr. Yong that according to Honda, the problems were normal characteristics of th[e] vehicle."  *Id.*  Plaintiff Yong then took the vehicle to Huggins Honda on two other occasions, but his vehicle never received any repairs.  *Id.* ¶ 55.  Therefore, Plaintiff Yong continues to experience the Transmission Programming Defect.  *Id.* ¶ 57.

Thomas and Julie DeSilvia – Thomas and Julie DeSilvia are residents of Illinois who purchased a new 2022 Honda Ridgeline from Honda on Grand.  *Id.* ¶¶ 59–60.  The DeSilvia Plaintiffs also purchased the vehicle primarily for personal, family, or household use, and valued "[p]assenger safety and reliability" in making the decision to purchase the vehicle.  *Id.* ¶¶ 61–62.  Prior to purchasing their vehicle, the DeSilvia Plaintiffs researched the Honda Ridgeline, including by "reviewing the Kelley Blue Book website's information regarding the Ridgeline and visiting the dealership's website."  *Id.* ¶ 62.  Thomas DeSilvia also spent a significant amount of time reviewing materials related to the Honda Ridgeline on Honda's automobiles.honda.com website, which Honda uses to "advertise, market, and drive[] sales for its automobiles to consumers."  *Id.* ¶¶ 62–63.  Honda advertised the 9-speed transmission on that website, and also made statements such as: "The Ridgeline dominates on and off the road."  *Id.* ¶¶ 64–65.  Thomas DeSilvia also used the "Build" function on Honda's website to research the 2022 Honda Ridgeline.  *Id.* ¶ 68.  At Honda on Grand, the DeSilvia Plaintiffs spoke to a sales representative

"who assured them the vehicle was safe and reliable." *Id.* ¶ 70. However, within a week of purchasing the vehicle, the DeSilvia Plaintiffs began experiencing the effects of the Transmission Programming Defect. *Id.* ¶ 73. The vehicle's transmission would "bang[], loudly, suddenly, and repeatedly, with great force when switching between first and second gear." *Id.* When the DeSilvia Plaintiffs took the car back to the dealership for a repair, they were told that it was functioning normally. *Id.* Then, on or around April 3, 2023, the DeSilvia Plaintiffs took the vehicle to a different Honda dealer, which also informed them that nothing was wrong with the vehicle. *Id.* ¶ 74. The DeSilvia Plaintiffs' vehicle has not received any repairs, and thus the DeSilvias continue to experience the effects of the Transmission Programming Defect. *Id.* ¶¶ 75–76.

Mark Treleven – Plaintiff Mark Treleven is a resident of Ohio who purchased a new 2016 Honda Pilot from Apostolakis Honda on or around September 14, 2016. *Id.* ¶¶ 78–79. Plaintiff Treleven also purchased the vehicle primarily for personal, family, or household use, and valued "[p]assenger safety and reliability" in making the decision to purchase the vehicle. *Id.* ¶¶ 80–81. Plaintiff Treleven researched the Honda Pilot online before making his purchase, and he also "relied on his years of ownership of prior Honda models, including an older Pilot." *Id.* ¶ 81. Apostolakis Honda sent Plaintiff Treleven brochures about the vehicle, which he reviewed prior to making his purchase. *Id.* In or around early 2017, Plaintiff Treleven began to experience various problems with the transmission in his vehicle. *Id.* ¶ 83. He brought the vehicle to Classic Honda on or around July 17, 2017, but was told that the vehicle was operating normally. *Id.* ¶ 84. He returned to Classic Honda two additional times, *id.* ¶ 85, and he also reported his concerns to Honda via letters and calls, *id.* ¶¶ 86–88. Plaintiff Treleven's vehicle never received any repairs, so he continues to experience the Transmission Programming Defect. *Id.* ¶¶ 89–90.

### C. Procedural History

The present action was filed on September 29, 2023, Dkt. No. 1, after substantial motion practice in *Browning v. American Honda Motor Co.*, No. 20-cv-05417-BLF (N.D. Cal.). The two cases were consolidated on November 8, 2023. Dkt. No. 19. On January 23, 2024, Defendant American Honda Motor Co., Inc. filed a motion to dismiss the consolidated amended complaint,

Dkt. No. 28, which was granted in part and denied in part on July 15, 2024, Dkt. No. 52. Plaintiffs then filed the Second Amended Consolidated Class Action Complaint on August 14, 2024. Dkt. No. 53.

The Second Amended Consolidated Class Action Complaint brings eleven causes of action against Honda, which are numbered out of order in light of prior claim dismissals: (1) the First Cause of Action asserts a claim for violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*, SACC ¶¶ 157–71; (2) the Third Cause of Action asserts a claim for breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 & 1791.1 *et seq.*, SACC ¶¶ 172–79; (3) the Fifth Cause of Action asserts a claim for breach of implied warranty, S.C. Code Ann. §§ 36-2-314 & 36-2A-212, SACC ¶¶ 180–202; (4) the Sixth Cause of Action asserts a claim under the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Comm. Code § 17.41 *et seq.*, SACC ¶¶ 203–15; (5) the Seventh Cause of Action asserts a claim for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, SACC ¶¶ 231–54; (6) the Eighth Cause of Action asserts a claim for breach of express warranty, Ill. Comp. Stat. §§ 5/2-313 & 5/2A-210, SACC ¶¶ 255–76; (7) the Tenth Cause of Action asserts a claim for breach of express warranty, Ohio Rev. Code Ann. § 1302.26 *et seq.*, SACC ¶¶ 277–300; (8) the Eleventh Cause of Action asserts a claim for breach of the implied warranty of merchantability, Ohio Rev. Code Ann. §§ 1302.27 & 1310.19, SACC ¶¶ 301–19; (9) the Thirteenth Cause of Action asserts a claim for breach of express warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*, SACC ¶¶ 216–25; (10) the Fourteenth Cause of Action asserts a claim for breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*, SACC ¶¶ 226–38; and (11) the Fifteenth Cause of Action asserts a claim for fraud by omission or fraudulent concealment, SACC ¶¶ 239–48. Honda filed a partial motion to dismiss the Second Amended Consolidated Class Action Complaint on September 19, 2024. Dkt. No. 59.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff

must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570. In addition, claims grounded in fraud must satisfy "the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks, alterations, and citation omitted).

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). On a motion to dismiss, a court's review is "generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice." *See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 938 (9th Cir. 2018) (quoting *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011)).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence*

*Capital*, 316 F.3d at 1051–52.  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."  *Id.* at 1052.  However, a strong showing with respect to one of the other factors may warrant denial of leave to amend.  *Id.*

### III.    DISCUSSION

In this motion, Honda seeks dismissal of the following claims: (1) the Ohio, Illinois, California, South Carolina, and Texas common law fraud claims; (2) the Illinois statutory fraud claim; and (3) the Magnuson-Moss Warranty Act claims insofar as they correspond to any state warranty claims that have been dismissed.

#### A.  Ohio and Illinois Common Law Fraud Claims

Honda argues that Plaintiffs' common law fraudulent omission claims based on Ohio and Illinois law must be dismissed because Plaintiffs have failed to allege a "special relationship" imposing a duty to disclose.  Mot. at 2.  In both states, Honda argues, the relationship between a vehicle purchaser and the manufacturer or distributor of the vehicle does not rise to the level of a fiduciary or similar confidential relationship, which is the type of special relationship necessary to trigger the duty to disclose.  *Id.* at 2–3 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996), and *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050 (N.D. Ill. 2022)).  Further, Honda argues that there is no safety issue that serves to trigger the disclosure duty.  *Id.* at 3.

In opposition, Plaintiffs argue that the Ohio and Illinois common law fraud claims are well pled because a duty to disclose can arise in cases of a "relationship of trust and confidence . . . where one party [is] in a superior position regarding knowledge."  Opp. at 5.  Plaintiffs believe that "there is a relationship of trust and confidence between an experienced automotive manufacturer . . . and a layperson consumer who trusts in the manufacturer's ability to provide reliable and quality goods."  *Id.*  Alternatively, Plaintiffs argue that "both Ohio and Illinois also recognize that a defendant has a duty to disclose where full disclosure is necessary to dispel misleading impressions" that the defendant created.  *Id.* at 6.

Plaintiffs' characterization of a "relationship of trust and confidence" stretches that phrase beyond its proper construction under Ohio and Illinois law.  While consumers may in some sense trust a proprietor from which they purchase a good, that reality often does not impose upon the

United States District Court
Northern District of California

seller an obligation to disclose potential defects.  In many cases, including this one, "the 'special trust relationship' must be 'extremely similar to that of a fiduciary relationship'" in order to trigger such a duty.  *Rodriguez*, 596 F. Supp. 3d at 1058.

Under Illinois law, that "threshold is a high one, and it is not enough that [P]laintiffs had purchased a vehicle from an authorized [Honda] dealer, and that [Honda] manufactured and distributed the vehicle."  *See Drake v. Toyota Motor Corp.*, No. 20-cv-01421, 2021 WL 2024860, at *6 (C.D. Cal. May 17, 2021) (internal alterations and citation omitted) (citing *Connick*, 174 Ill. 2d at 501).  "A confidential relationship only goes to a situation where one party, because of some close relationship, relies very heavily on the judgment of another."  *Gary-Wheaton Bank v. Burt*, 104 Ill. App. 3d 767, 774 (1982) (citing *Carey Elec. Contracting, Inc. v. First Nat'l Bank of Elgin*, 74 Ill. App. 3d 233, 237 (1979)).  If the relationship is not "anything more than buyer and seller of goods," there is no qualifying "special relationship."  *Moore v. Pendavinji*, -- N.E.3d --, 2024 WL 4489612, at *7 (Ill. App. Oct. 15, 2024) (citing *Connick*, 174 Ill. 2d at 501); *accord In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 23-cv-0818, 2024 WL 4333246, at *12 (N.D. Ill. Sept. 27, 2024) ("[S]uperior knowledge is not sufficient to create such a duty.").

The same is true under Ohio law, where a qualifying special relation may arise "when one party has information that the other [party] is entitled to know because of a fiduciary *or other similar relation of trust and confidence between them*."  *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 480 (6th Cir. 2014) (emphasis in original) (quoting *Showe Mgmt. Corp. v. Kerr*, No. 83406, 2004 WL 1118819, at ¶ 32 (Ohio Ct. App. May 20, 2004)).  Plaintiffs are not wrong that a special trust relationship can *potentially* arise in a business transaction; however, "[o]rdinarily in business transactions where parties deal at arm's length, each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other."  *Blon v. Bank One, Akron, N.A.*, 35 Ohio St. 3d 98, 101 (1988).  Plaintiffs in this case allege no more than a "buyer and seller" relationship, which is not enough to create a duty to disclose based on a relationship of "special confidence and trust."

Plaintiffs' alternative argument—that "both Ohio and Illinois also recognize that a

United States District Court
Northern District of California

defendant has a duty to disclose where full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts," Opp. at 6— fares no better.  There, Plaintiffs point to *In re General Motors LLC Ignition Switch Litigation*, 257 F. Supp. 3d 372 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-mc-2543, 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017), for the proposition that, under Illinois law, "a plaintiff may also 'establish a duty to speak for fraudulent concealment purposes in situations where (i) a defendant's acts contribute to plaintiff's misapprehension of a material fact and defendant fails to correct it or (ii) the defendant's silence is accompanied by deceptive conduct.'"  *Id.* at 414.  The rule is similar under Ohio law: "a duty [to disclose] arises in business transactions . . . where . . . full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts."  *In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d 1291, 1309 (S.D. Fla. 2020) (citing *Gator Dev. Corp. v. VHH, Ltd.*, No. C-080193, 2009 WL 1027584, at *6 (Ohio Ct. App. Apr. 17, 2009)).

The problem is that Plaintiffs have not pointed to any acts or representations by Defendant that amount to a partial disclosure contributing to a misapprehension of a material fact.  Plaintiffs' cases are illustrative.  In *Henderson Square Condominium Association v. LAB Townhomes LLC*, 16 N.E.3d 197 (Ill. App. 2014), "the plaintiffs alleged that the defendants explained that the cracks [in the walls of a residence] were the result of natural variances in temperature and humidity" but did *not* disclose that they "knew that the cracks were instead the result of structural defects in the roof."  *Id.* at 217.  The court in that case found that the facts pleaded were adequate to survive a motion to dismiss because "[t]he defendants had a duty to reveal the true nature of the cracks once plaintiffs addressed them."  *Id.*  And in *Newman v. Metropolitan Life Insurance Company*, 885 F.3d 992 (7th Cir. 2018), the Court explained that "[s]uch a duty may arise when a defendant makes a statement 'that it passes off as the whole truth while omitting material facts that render the statement a misleading "half-truth."'"  *Id.* at 1004 (quoting *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397–98 (7th Cir. 2009).  On the other hand, a partial omission theory falls flat where the defendant never suggested that a particular communication contained the "whole truth."  *See id.*

United States District Court
Northern District of California

1    Here, Plaintiffs have failed to point to a statement amounting to a deceptive "half-truth."

2 In their opposition to Defendant's motion, Plaintiffs point the Court to paragraphs 4 and 5 of the

3 Introduction to the Complaint.  Opp. at 7.  But those paragraphs state only that a former Honda

4 vice president described the ZF 9HP transmission as "[i]nstinctively responsive," "firmly planted,"

5 and "incredibly nimble," and that the transmission was "marketed as a significant technological

6 advancement . . . [with] better performance and fuel economy while maintaining the ease of use of

7 traditional automatic transmissions."  SACC ¶¶ 4, 5.  Exaggerated statements of quality or

8 superiority that cannot be precisely determined as true or false are mere puffery, and are "not

9 actionable as fraud" because "no reasonable consumer would rely on such an implicit assertion as

10 the sole basis for making a purchase."  *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73–74

11 (2007); *accord Diemert v. Lincoln Wood Prods., Inc.*, No. 11-cv-358, 2012 WL 84968, at *3

12 (N.D. Ohio Jan. 11, 2012) ("Statements of opinion and sales 'puffery' are insufficient to form the

13 basis of a fraud claim under Ohio law because such statements cannot reasonably be relied upon

14 by the recipient.").

15    Plaintiff Treleven alleges only that he "spent time researching" his Honda Pilot, reviewed

16 vehicle brochures, and "interact[ed] with" the dealership.  SACC ¶ 81.  He says that he "believed

17 that the Honda Pilot would be a safe and reliable vehicle," *id.*, but he does not point to any

18 specific, partial statement that he believes should have been supplemented in order to provide the

19 "whole truth."  The same is true of the DeSilvia Plaintiffs, who state that they "researched the

20 Honda Ridgeline, including reviewing the Kelley Blue Book website's information regarding the

21 Ridgeline and visiting the dealership's website."  *Id.* ¶ 62.  They also researched the Ridgeline on

22 Honda's website, *id.*, and point the Court to certain website language, including a statement that

23 the Ridgeline has "9-Speed Automatic Transmission with Shift-By-Wire and Paddle Shifters," *id.*

24 ¶ 63, and that the "Ridgeline dominates on and off the road," *id.* ¶ 65.  The latter statement is

25 inactionable puffery, and the former statement is merely a statement of fact that the car has a 9-

26 speed automatic transmission.  Therefore, Plaintiffs have not shown that Honda had a duty to

27 disclose under a partial disclosure theory either.

28    Accordingly, the Court hereby DISMISSES Plaintiffs' Illinois and Ohio common law

fraud claims.  As Plaintiffs have already had one opportunity to amend these claims and were not

successful, this dismissal is WITHOUT LEAVE TO AMEND.  *Eminence Capital*, 316 F.3d at

1052.

### B.  California, South Carolina, and Texas Common Law Fraud Claims

Regarding the California, South Carolina, and Texas common law fraudulent omission or

fraud by concealment claims, Honda argues that each is barred by the economic loss doctrine.

Mot. at 4–8.

#### 1.  California Common Law Fraud

Under the economic loss rule in California, "[w]here a purchaser's expectations in a sale

are frustrated because the product he bought is not working properly, his remedy is said to be in

contract alone, for he has suffered only 'economic' losses."  *Robinson Helicopter Co. v. Dana

Corp.*, 34 Cal. 4th 979, 988 (2004).  The rule aims to "prevent[] the law of contract and the law of

tort from dissolving one into the other."  *Id.* (citation omitted).  However, "in cases involving

alleged fraud," Honda argues, "the boundary between contract and fraud is protected not by the

economic loss rule per se but instead by broader independent tort principles."  Mot. at 5.  This

distinction has been clarified in the wake of *Rattagan v. Uber Technologies, Inc.*, 17 Cal. 5th 1

(2024), which held that courts must conduct a three-step analysis to ascertain whether all elements

of a fraud claim can be established independently of the parties' rights and obligations under the

relevant contract.  *Id.* at 26.

In this case, Honda urges the Court to find that the elements of the California fraud claim

"overlap with—and are not independent of—the rights and duties pursuant to" the Parties'

warranty agreement.  Mot. at 6.  Honda argues that the "new vehicle limited warranty [provided]

with the sale or lease of Plaintiffs' vehicles" acknowledges that vehicles may contain defects,

meaning that "the parties anticipated that risk and allocated the obligation to repair covered defects

to [Honda]" through the warranty.  Mot. at 5.  In other words, "Plaintiffs must prove a warranty

breach to prove fraud" because if Honda had either (1) provided Plaintiffs "with vehicles in the as-

promised condition," or (2) repaired the vehicles under the warranty, "Plaintiffs would have

received what they paid for."  *Id.* at 6–7 (citing *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal.

App. 4th 1807, 1818 (1996)).  Honda argues that this means the alleged fraud is not independent from the contract and is accordingly barred by the independent tort doctrine.  *Id.* at 7.  Plaintiffs respond that the economic loss doctrine is not a bar because the fraud allegations relate to the *inducement* of the contracts in question rather than the *performance* under them.  Opp. at 8. Plaintiffs further argue that their losses are not only economic, and that fraud claims are excluded from California's, South Carolina's, and Texas's economic loss rules under various exceptions. *Id.* at 9–10.

At the hearing on January 16, 2025, the Court requested supplemental briefing on the economic loss rule and independent tort doctrine in light of *Rattagan*, which Plaintiffs failed to thoroughly analyze in their Opposition brief.  Dkt. No. 74 at 33:6–34:21.  In Plaintiffs' supplemental brief, they argue that both prior to and following the California Supreme Court's decision in *Rattagan*, "courts commonly find fraudulent concealment claims satisfy the independent tort requirements," such that they are not barred by the economic loss rule.  Plf.'s Suppl. Br. at 1.  In this case, Plaintiffs argue that "Honda had a duty independent of any contractual duty to disclose the safety-related Transmission Programming Defect."  *Id.* at 2.  And Plaintiffs also argue that the purported injury suffered based on Honda's failure to disclose— overpayment by Plaintiffs for their vehicles—is "not accounted for by any contract negotiated between the parties," since the express warranty contemplates only prospective repairs.  *Id.* Plaintiffs continue that the *Rattagan* court expressly decided not to reverse or alter the California Court of Appeal's decision in *Dhital v. Nissan North America, Inc.*, 84 Cal. App. 5th 828 (2022), meaning that courts continue to treat *Dhital*—which held that the economic loss rule and independent tort doctrine are not bars to a fraudulent inducement claim—as good law.  Plf.'s Suppl. Br. at 3–4.  For its part, Honda's supplemental response reiterates that "Plaintiffs' claims here all rest on an alleged breach of warranty," without which no harm would have occurred. Deft.'s Suppl. Br. at 3.  Accordingly, Defendant's position is that Plaintiffs' fraudulent concealment claims cannot be established independently of the warranty claim, and therefore the independent tort principle undermines Plaintiffs' fraud claims.  *Id.*  Defendant says it follows that its position is actually consistent with *Dhital*, because it is not the narrower economic loss rule that

13

United States District Court
Northern District of California

1   bars the claim, but rather the broader independent tort doctrine.  *Id.* at 4.

2        With the benefit of that supplemental briefing, the Court finds that Plaintiffs' California

3   fraudulent omission claim is not barred by the economic loss rule or the independent tort doctrine.

4   In fact, both sides are in agreement that the economic loss rule itself does not bar the fraudulent

5   concealment claim, since, as the *Rattagan* court explained, the "economic loss rule does not apply

6   to limit recovery for intentional tort claims like fraud."  17 Cal. 5th at 38; *see* Plf.'s Suppl. Br. at 1;

7   Deft.'s Suppl. Br. at 1.  Therefore, the Court confines the following discussion to whether the

8   independent tort doctrine bars the claim.  It does not.

9        First, *Dhital* rather than *Rattagan* applies to the fact pattern in this case.  *Rattagan* dealt

10  with whether, "[u]nder California law, a plaintiff may assert a cause of action for fraudulent

11  concealment *based on conduct occurring in the course of a contractual relationship*."  17 Cal. 5th

12  at 45 (emphasis added).  As Plaintiffs correctly point out, *see* Plf.'s Suppl. Br. at 3, the *Rattagan*

13  court included a footnote distinguishing the fact pattern in *Rattagan* from a situation "involv[ing]

14  claims of fraudulent inducement by concealment."  17 Cal. 5th at 41 n.12.  The fraudulent

15  inducement scenario is addressed by *Dhital*, in which the California Court of Appeal carefully

16  evaluated prior case law before coming to the conclusion that "[f]or fraudulent inducement . . . the

17  duty that gives rise to tort liability is either completely independent of the contract or arises from

18  conduct which is both intentional and intended to harm," because "a defendant's conduct in

19  fraudulently inducing someone to enter a contract is separate from the defendant's later breach of

20  the contract or warranty provisions that were agreed to."  84 Cal. App. 5th at 841.  The court of

21  appeal found this conclusion to be in line with "California's public policy favoring the punishment

22  and deterrence of fraud."  *Id.* at 840.  By expressly calling out the distinction between *Rattagan*'s

23  facts and the fraudulent inducement cases and then dismissing the appeal of *Dhital* without

24  vacating, reversing, or otherwise altering the court of appeal's opinion, the California Supreme

25  Court indicated that the reasoning in *Dhital* should guide claims—like those before this Court—of

26  fraudulent inducement by omission.  *See Dhital v. Nissan N. Am.*, 559 P.3d 1083 (2024); *see also*

27  *Ladanowsky v. FCA US LLC*, No. 24-cv-07197, 2024 WL 5250357, at *4–5 (N.D. Cal. Dec. 30,

28  2024) (discussing the distinction between *Rattagan* and *Dhital* and applying *Dhital* where the

1    plaintiff alleged fraudulent inducement to enter a contract); *Antonov v. Gen. Motors LLC*, No. 23-

2    cv-01593, 2024 WL 217825, at *9 (C.D. Cal. Jan. 19, 2024) (collecting cases following *Dhital* to

3    find that the economic loss rule does not bar fraudulent inducement claims).

4        Defendant's authority to the contrary is not persuasive.  Granted, *Crair v. Ford Motor*

5    *Company*, No. BC664414 (Cal. Super. Ct. Dec. 20, 2024), considered *Rattagan*'s application to a

6    fraudulent inducement claim and found that it "did not hold that tort claims based on pre-contract

7    conduct are categorically viable under the independent-tort principle."  Dkt. No. 65-1 at 7.  Then,

8    in granting the defendant's motion for judgment on the pleadings, the *Crair* court concluded that

9    the plaintiffs' only alleged damage was "sustained as a result of Ford's alleged breach of warranty,

10   not as a result of its alleged concealment."  *Id.* at 10.  In addition, the court found that "the risk

11   that the transmission in Plaintiffs' Ford Focus might be defective is precisely one of the risks"

12   contemplated by the warranty agreement.  *Id.*  These arguments parallel Honda's.  However, *Crair*

13   apparently did not consider the impact of the California Supreme Court's dismissal of the *Dhital*

14   appeal.  *See id.* at 6 & n.1 (noting that *Dhital* was under review and "still undecided," and that

15   *Rattagan* had "expressly declined to address" fraudulent inducement by concealment).  With the

16   benefit of that dismissal, which leaves *Dhital*'s reasoning and conclusion intact, this Court

17   concludes that the California Supreme Court's three-step analysis from *Rattagan* controls

18   fraudulent concealment *within* contractual relationships, whereas *Dhital* controls fraudulent

19   concealment *inducing* the formation of a contractual relationship.

20       In any event, *even if* the three-step analysis from *Rattagan* were applicable here, the Court

21   would still find that the independent tort doctrine does not bar Plaintiffs' claim.  Under *Rattagan*,

22   the Court must first "ascertain the full scope of the parties' contractual agreement, including the

23   rights created or reserved, the obligations assumed or declined, and the provided remedies for

24   breach."  17 Cal. 5th at 26.  "Second, it must determine whether there is an independent tort duty

25   to refrain from the alleged conduct."  *Id.*  "Third, if an independent duty exists, the court must

26   consider whether the plaintiff can establish all elements of the tort independently of the rights and

27   duties assumed by the parties under the contract."  *Id.*

28       In this case, the relevant question is whether there is an independent tort duty to refrain

United States District Court
Northern District of California

1   from concealing the Transmission Programming Defect.  Under California law, Honda has a duty

2   to disclose if it has "exclusive knowledge of material facts not known to the plaintiff."  *Sloan v.*

3   *Gen. Motors LLC*, 287 F. Supp. 3d 840, 865 (N.D. Cal. 2018), *order clarified*, No. 16-cv-07244,

4   2018 WL 1156607 (N.D. Cal. Mar. 5, 2018), *and on reconsideration*, 438 F. Supp. 3d 1017 (N.D.

5   Cal. 2020).  Because an intentional concealment or failure to disclose under those circumstances

6   can support a California common law fraudulent omission claim, *see id.*, the Court finds that there

7   *is* an independent tort duty to refrain from the concealing conduct Plaintiffs challenge.  And

8   contrary to Defendant's argument, Plaintiffs *can* establish all elements of the tort independently of

9   the warranty contract.  The Court is not persuaded that if Honda had either (1) provided Plaintiffs

10  "with vehicles in the as-promised condition," or (2) repaired the vehicles under the warranty,

11  "Plaintiffs would have received what they paid for," *see* Mot. at 6–7, because Plaintiffs' point is

12  that they were fraudulently induced into entering a contract that they might otherwise have

13  rejected.  Had they known that they would repeatedly need to take the car in for repairs, they

14  might have negotiated a lower sales price to counterbalance the lost time and inconvenience

15  inherent in a prolonged repair saga—or they might have chosen a different car altogether.

16      That hypothetical illustrates why Defendant's reliance on *Santana* is misplaced: *Santana*

17  says that the "existence of a warranty presupposes that some defects may occur," but the court in

18  that case ultimately determined that the plaintiff had failed to "demonstrate an intent to conceal a

19  defect" prior to purchase of the subject vehicle.  *Santana v. FCA US, LLC*, 56 Cal. App. 5th 334,

20  345 (2020).  It thus has no application to the question of whether a warranty agreement can

21  preclude a fraudulent inducement claim.  The Court likewise rejects Defendant's appeal to cases

22  like *In re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*, 689 F.

23  Supp. 3d 760 (C.D. Cal. 2023), and *Davidson v. Apple, Inc.*, No. 16-cv-4942, 2017 WL 3149305

24  (N.D. Cal. July 25, 2017), which Defendant invokes for the proposition that any uncertainty under

25  the economic loss rule "should be resolved so as to limit rather than expand liability."  689 F.

26  Supp. 3d at 680.  While the principle may be sound, the Court concludes that, in the wake of

27  *Rattagan* and the dismissal of the *Dhital* appeal, the economic loss rule unambiguously does *not*

28  apply to Plaintiffs' California common law fraud claim.

United States District Court
Northern District of California

1   Having concluded that neither the economic loss rule nor the independent tort doctrine bars

2   Plaintiffs' California fraudulent omission claim, the next question is whether Plaintiffs have

3   adequately alleged the claim.  "A common law fraudulent omission claim requires demonstrating

4   that: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must

5   have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have

6   intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the

7   plaintiff must have been unaware of the fact and would not have acted as he did if he had known

8   of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the

9   fact, the plaintiff must have sustained damage."  *Sloan*, 287 F. Supp. 3d at 865 (quoting *Hahn v.*

10  *Mirda*, 147 Cal. App. 4th 740, 748 (2007)).  Defendant challenges only the adequacy of Plaintiffs'

11  allegations regarding the duty-to-disclose factor.

12  The Court concludes that Plaintiffs have met their burden under Rule 9(b) to plead a duty

13  to disclose on Honda's part.  Such a duty "may arise '(1) when the defendant is in a fiduciary

14  relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts

15  not known to the plaintiff; (3) when the defendant actively conceals a material fact from the

16  plaintiff; [or] (4) when the defendant makes partial representations but also suppresses some

17  material fact."  *Id.* (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal.

18  2007)).  Plaintiffs invoke the second of these grounds.

19  As Plaintiffs point out, this Court previously found in the consolidated *Browning* matter

20  that Plaintiffs "adequately alleged Honda breached its duty to disclose its knowledge of the safety-

21  related Transmission Programming Defect by pleading Honda's exclusive knowledge thereof."

22  Plf.'s Suppl. Br. at 4–5; *see Browning*, 2022 WL 5287775, at *2–3 (denying Honda's partial

23  motion to dismiss fraudulent omission claims based on the argument that Honda "did not have a

24  duty to disclose the defect").  The same allegations found sufficient at that point also exist here.

25  Specifically, Plaintiffs allege that "[a]s early as December 2014, through TSBs, consumer

26  complaints, and dealership repair orders, among other internal sources, [Honda] knew [about the]

27  Transmission Programming Defect."  SACC ¶ 116.  Plaintiffs then go on to allege various details

28  about Honda's pre-release testing data, *id.* ¶¶ 117–18, Honda's awareness of "the sheer number of

reports received from dealerships and from customer complaints directly to Honda," *id.* ¶ 119, and Honda's "service campaign and multiple Technical Service Bulletins" issued with relation to the Transmission Programming Defect, *see id.* ¶¶ 122–32. The Court concludes that Plaintiffs have adequately alleged that Honda was aware of the Transmission Programming Defect prior to the sale of the vehicle to the Moore Plaintiffs, and that this information was within Honda's exclusive knowledge at the time. Those allegations are sufficient to support Plaintiffs' claim that Honda had a duty to disclose the defect to Plaintiffs under California law. *See Sloan*, 287 F. Supp. 3d at 867. Accordingly, Defendant's motion to dismiss Plaintiffs' California fraudulent omission claim is DENIED.

### 2. Texas and South Carolina Common Law Fraud

Regarding Plaintiffs' fraudulent omission claims under Texas and South Carolina law, Defendant also argues that the economic loss rule bars those claims. Mot. at 8 (citing *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716 (Tex. 2014), and *Sapp v. Ford Motor Co.*, 386 S.C. 143 (2009)). Plaintiffs respond that "Texas recognizes an exception to the [economic loss rule] based on misrepresentations and fraud," Opp. at 9 (citing *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 447–48), and "South Carolina recognizes an [economic loss rule] exception where 'other property damage' is alleged," *id.* at 10 (citing *Kershaw County Bd. of Educ. v. U.S. Gypsum, Co.*, 302 S.C. 390, 393–94 (1990)).

The Court agrees with Plaintiffs regarding Texas law. In that jurisdiction, "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract," because there is "an independent legal duty, separate from the existence of the contract itself, [that] precludes the use of fraud to induce a binding agreement." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *accord Chapman Custom Homes*, 445 S.W.3d at 718 ("[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit."). Although Defendant tries to distinguish *Formosa Plastics* by arguing that it "involved affirmative

1    misrepresentations, not omissions," Reply at 5, the Court does not find it appropriate to construe

2    the Texas economic loss rule fraud exception so narrowly in light of subsequent case law

3    suggesting that fraudulent omissions are equally subject to the exception, *see Bates Energy Oil &*

4    *Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 655 (W.D. Tex. 2019) (finding that a

5    fraudulent inducement claim was "not barred by the economic loss rule" where the claim alleged

6    "misrepresentations *or* omissions of material facts" (emphasis added)).  In Texas, the economic

7    loss rule is no bar to a properly pled fraudulent concealment claim, and Defendant does not argue

8    that Plaintiffs fail to allege the elements of a fraudulent concealment or omission claim under

9    Texas law.  Therefore, Defendant's motion to dismiss Plaintiffs' Texas common law fraud claim

10    is DENIED.

11        South Carolina's law is slightly different, holding that "tort liability only lies where there is

12    damage done to other property or personal injury."  *Sapp*, 386 S.C. at 147.  In other words, South

13    Carolina's economic loss rule precludes tort liability "if the damage suffered by the plaintiff is

14    only to the product itself."  *Id.*  Accordingly, other courts have viewed South Carolina's version of

15    the rule as particularly narrow in scope, stating that "South Carolina does not recognize a fraud

16    exception to the economic loss rule," *In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d at

17    1309, and rejecting South Carolina fraudulent omission claims in cases regarding alleged vehicle

18    defects, *see Gonzalez v. Am. Honda Motor Co.*, 720 F. Supp. 3d 833, 848 (C.D. Cal. 2024).  This

19    Court is not persuaded to go a different way by Plaintiffs' authority, which summarily denies a

20    motion to dismiss a South Carolina fraud claim without providing any substantive analysis beyond

21    a brief citation to another order that it characterizes as "collecting cases regarding economic loss

22    doctrine in various states."  *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1297 (E.D.

23    Mich. 2021).  Plaintiffs' South Carolina common law fraud claim is DISMISSED.  As Plaintiffs

24    have already had one opportunity to amend this claim and were not successful, this dismissal is

25    WITHOUT LEAVE TO AMEND.  *Eminence Capital*, 316 F.3d at 1052.

26        **C.  Illinois Statutory Fraud Claim**

27        In seeking dismissal of Count 7, the Illinois Consumer Fraud and Deceptive Business

28    Practices Act ("ICFA") claim, Honda argues that "[t]he ICFA requires a plaintiff to identify a

specific communication containing an affirmative statement or omission that deceived her." Mot. at 8. The Court had previously dismissed this claim based on Plaintiffs' failure to sufficiently allege facts supporting the requirement that they had received a specific deceptive communication. *Moore v. Am. Honda Motor Co., Inc.*, 740 F. Supp. 3d 814, 828–29 (N.D. Cal. 2024). Although the DeSilvia Plaintiffs added additional allegations in the Second Amended Consolidated Class Action Complaint related to their research on the vehicle they purchased, Honda argues that the claim still fails because "[a] statement that is true and does not create a false impression is not actionable under the ICFA," and the DeSilvia Plaintiffs have failed to point to any statement they received that was untrue or misleading. Mot. at 9. Specifically, statements that the 2022 Honda Ridgeline was equipped with a 9-speed automatic transmission are true, *see id.* at 9–10, and other statements about the Ridgeline's performance are mere "puffery" that do not refer to the transmission, *id.* at 10.

In opposition, Plaintiffs argue that "omission of any material fact constitutes deceptive conduct." Opp. at 10 (quoting *Haymer v. Countrywide Bank*, No. 10-cv-5910, 2011 WL 2790172, at *4 (N.D. Ill. July 15, 2011)). Accordingly, relying on *Zak v. Bose Corporation*, No. 17-cv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019), Plaintiffs state that the Second Amended Consolidated Class Action Complaint "contains extensive allegations regarding the [Honda] communications that the DeSilvias reviewed and that omitted the existence of the Defect, a material fact." Opp. at 11. Plaintiffs point the Court to allegations that Honda has touted its "intelligent traction management," as well as its ability to "dominate on and off the road." *Id.* at 12 (citing SACC ¶¶ 62–69). In addition, Plaintiffs point to allegations that Honda made statements about the "'[i]nstinctively responsive,' 'firmly planted,' and 'incredibly nimble' ZF 9HP Transmission," as well as the marketing calling the transmission "substantially lighter . . . with a wider overall ratio range and more closely spaced individual gear ratios to enhance both performance and fuel efficiency." *Id.* at 12–13 (citing SACC ¶¶ 4–5). Plaintiffs say that the omission of an accompanying reference to the alleged Transmission Programming Defect constitutes a deceptive act sufficient to state a claim under the ICFA. *Id.* at 13.

"In order to state a claim under the ICFA, a plaintiff must allege '(1) a deceptive act or

United States District Court
Northern District of California

1  practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the

2  occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual

3  damage to the plaintiff (5) proximately caused by the deception.'" *Muehlbauer v. Gen. Motors*

4  *Corp.*, 431 F. Supp. 2d 847, 867 (N.D. Ill. 2006) (quoting *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d

5  134, 149 (2002)).  "Consumers raising ICFA claims are afforded 'far broader' protection than

6  those who bring common law fraud claims." *Id.* (quoting *Celex Group, Inc. v. Exec. Gallery, Inc.*,

7  877 F. Supp. 1114, 1128 (N.D. Ill. 1995)).  However, as with Illinois common law fraudulent

8  concealment claims, statements amounting to mere puffery—meaning statements that are "so

9  vague as to leave the standards for interpretation open to a number of plausible criteria for

10  judgment, and not capable of precise measuring, such that a reasonable consumer would not rely

11  on them"—are "not actionable as a fraudulent misrepresentation." *Castaneda v. Amazon.com,*

12  *Inc.*, 679 F. Supp. 3d 739, 749–50 (N.D. Ill. 2023) (quoting *O'Connor v. Ford Motor Co.*, 567 F.

13  Supp. 3d 915, 962 (N.D. Ill. 2021), and *High Road Holdings, LLC v. Ritchie Bros. Auctioneers*

14  *(Am.), Inc.*, No. 07-cv-4590, 2008 WL 450470, at *4 (N.D. Ill. 2008)); *accord Higgins v. Yamaha*

15  *Motor Corp.*, 741 F. Supp. 3d 768, 776 (N.D. Ill. 2024).

16        In the Second Amended Consolidated Class Action Complaint, Plaintiffs did add

17  allegations indicating that they had received and/or reviewed communications made by Honda, an

18  element that was missing in the last version of the Complaint.  *E.g.*, SACC ¶¶ 4–5, 62–69.

19  However, as discussed above with regard to Plaintiffs' Illinois common law fraud claim, the only

20  direct statements by Honda that the DeSilvia Plaintiffs identify in support of this claim are

21  inactionable puffery.  *See supra* section III.A.  Statements by Honda to the effect that its vehicles

22  can "dominate on and off the road" or are "incredibly nimble" are "meaningless superlatives that

23  no reasonable person would take seriously," *see Higgins*, 741 F. Supp. 3d at 776, in line with other

24  "descriptive phrases" determined by the Illinois Supreme Court to be "not actionable as a

25  misrepresentation of fact," *Barbara's Sales*, 227 Ill. 2d at 73 (quoting *Avery v. State Farm Mut.*

26  *Auto. Ins. Co.*, 216 Ill. 2d 100, 174 (2005)).  Accordingly, the Court hereby DISMISSES

27  Plaintiffs' Illinois Consumer Fraud and Deceptive Business Practices Act claim.  As Plaintiffs

28  have already had one opportunity to amend this claim and were not successful, this dismissal is

1    WITHOUT LEAVE TO AMEND.  *Eminence Capital*, 316 F.3d at 1052.

2        **D.  Magnuson-Moss Warranty Act Claims**

3        Finally, Honda argues that Plaintiffs' Magnuson-Moss Warranty Act claims—one of

4    which is based on express warranty, and the other of which is based on implied warranty—are

5    valid only to the extent that the underlying state law claim is valid.  Mot. at 12.  Therefore, Honda

6    argues that these claims may be asserted only by (1) the DeSilvia Plaintiffs for express warranty;

7    (2) Trevelen for express warranty; (3) Boatwright for implied warranty; and (4) the Moore

8    Plaintiffs for implied warranty.  *Id.* at 13.  Plaintiffs "do not dispute [Honda's] contention and

9    would agree to limit the individual MMWA claims to those aforementioned ones."  Opp. at 13.

10   Accordingly, the Court DISMISSES WITHOUT LEAVE TO AMEND the Magnuson-Moss

11   Warranty Act claims except as to: (1) the DeSilvia Plaintiffs for express warranty; (2) Trevelen for

12   express warranty; (3) Boatwright for implied warranty; and (4) the Moore Plaintiffs for implied

13   warranty.

14   **IV.    ORDER**

15       For the foregoing reasons, IT IS HEREBY ORDERED that:

16       1.   Plaintiffs' Illinois, Ohio, and South Carolina common law fraud claims are

17            DISMISSED WITHOUT LEAVE TO AMEND.

18       2.   Defendant's motion to dismiss Plaintiffs' California and Texas common law fraud

19            claims is DENIED.

20       3.   Plaintiffs' ICFA claim is DISMISSED WITHOUT LEAVE TO AMEND.

21       4.   The Magnuson-Moss Warranty Act claims are DISMISSED WITHOUT LEAVE TO

22            AMEND except as to: (1) the DeSilvia Plaintiffs for express warranty; (2) Trevelen for

23            express warranty; (3) Boatwright for implied warranty; and (4) the Moore Plaintiffs for

24            implied warranty.

25       **IT IS SO ORDERED.**

26   Dated:  March 28, 2025

27   
     _____

28   BETH LABSON FREEMAN
     United States District Judge

22

*United States District Court*
*Northern District of California*